**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK



FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ NOV 18 2020 ★

BROOKLYN OFFICE

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* VANESSA MATHURIN,<br><br>*Plaintiffs,*<br><br>v.<br><br>**VECTOR REMOTE CARE, LLC**, **TRIVEK HEALTH SOLUTIONS, INC.**, and **KEVIN HOFFMAN**,<br><br>*Defendants.* | DOCKET NO. _____<br><br>FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)<br><br>JURY TRIAL DEMANDED |

### *QUI TAM* COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff and *qui tam* Relator Vanessa Mathurin, by and through her undersigned counsel, Brown, LLC, alleges of personal knowledge as to her own observations and actions, and on information and belief as to all else, as follows:

### I.
### PRELIMINARY STATEMENT

1. This is a *qui tam* action on behalf of the United States of America (the "Government") under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.* (the "FCA"), to recover treble the actual damages sustained by, and civil penalties owed to, the Government arising from Defendants' submission of false claims to Medicare.

2. Defendants Vector Remote Care, LLC ("Vector") and Trivek Health Solutions, Inc. ("Trivek") provide remote cardiac monitoring ("RCM") to patients nationwide.

1

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

3. In October 2019, Vector conjured a sham location in Long Island City, New York even though its true base of operations is in Oregon. Defendants enrolled the sham New York location in Medicare as an Independent Diagnostic Testing Facility ("IDTF").

4. Defendants feigned a New York presence to take advantage of the high Medicare reimbursement rates. Defendants referred most, if not all, of their existing patients to the sham location, and billed Medicare for RCM as though the monitoring had been performed in New York. In reality, virtually none of Defendants' patients and RCM technicians were located in New York.

5. By claiming that the RCM was performed in New York, Defendants submitted false claims to Medicare.

6. Further, the New York location failed to meet minimum certification requirements governing IDTFs and so was ineligible to submit claims to Medicare.

7. In fact, even though the regulations dictate that an IDTF must have a discrete location, this was just a WeWork shared workspace location without proper equipment or staff.

8. The false nature of the New York location became even clearer in June 2020, when Defendants directed their on-site employees to work from home and migrated to a "Hot Desk," which is a commonly-shared-as-needed desk at the WeWork workspace.

9. Because the New York location failed to meet minimum certification requirements for IDTFs, each claim Vector submitted to Medicare from that location was false within the meaning of the False Claims Act.

10. This complaint is being filed *in camera* and under seal pursuant to 31 U.S.C. § 3730(b)(2). A copy of this complaint, along with written disclosure of substantially all material evidence and information that Relator possesses, was served on the Attorney General of the United

States and the United States Attorney for the Eastern District of New York, pursuant to 31 U.S.C. § 3730(b)(2) and Fed. R. Civ. P. 4(d).

## II.
## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, because this action is brought for violations of the FCA, 31 U.S.C. §§ 3729 *et seq.* (as amended).

12. The Court has personal jurisdiction over Defendants because Defendants are licensed to transact and do transact business in this District. Defendant Vector is also headquartered in this District and has carried out its fraudulent scheme in this District.

13. Venue is proper in this District pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391(b)(2), because Defendants can be found in, are licensed to do business in, and transact or have transacted business in this District, and events or omissions that give rise to these claims have occurred in this District.

14. This complaint is filed within the time period specified by 31 U.S.C. § 3731(b).

## III.
## NO PUBLIC DISCLOSURE;
## INDEPENDENT AND MATERIAL KNOWLEDGE
## OF VIOLATIONS OF THE FALSE CLAIMS ACT

15. Relator makes the allegations in this complaint based on her own knowledge, experience and observations.

16. Relator is the original source of the information she has given to the Government regarding Defendants' conduct and scheme to violate federal law.

17. There has been no public disclosure, relevant under 31 U.S.C. § 3730(e), of the "allegations or transactions" in this complaint; or, to the extent that any such public disclosure has

been made, Relator has knowledge that is independent of and materially adds to that public disclosure.

## IV.
## THE PARTIES

### A. Plaintiff the United States

18. Relator brings this action on behalf of Plaintiff the United States of America. At all times relevant to this complaint, the United States, acting through the Centers for Medicare & Medicaid Services ("CMS"), which is a part of the federal Department of Health and Human Services ("HHS"), reimbursed Defendants for claims they submitted for RCM.

### B. Plaintiff and Relator Mathurin

19. Relator Vanessa Mathurin is a citizen of the United States and, at all relevant times, has been a resident of Elmwood Park, New Jersey.

20. Relator was employed by Vector at the sham New York location from approximately November 19, 2019, to approximately October 20, 2020, and had access to Defendants' electronic and paper records. Relator also participated in monthly conference calls with Vector's staff, including their RCM technicians.

21. Thus, Relator has first-hand knowledge of the fraudulent scheme alleged herein.

### C. Defendants

22. Defendant Vector Remote Care, LLC, is a New York limited liability company with a registered principal business address of 27-01 Queens Plaza N, Long Island City, NY 11101, which is in fact the address of a WeWork coworking space. Vector's mailing address is 543 NW York Drive, Suite 160, Bend, Oregon 97703.

23. Defendant Trivek Health Solutions, Inc., is an Oregon corporation with a principal business address of 543 NW York Drive, Suite 160, Bend, Oregon 97703. At all times relevant to this complaint, Trivek has done business as Vector Remote Care, LLC.

24. Defendant Kevin Hoffman is a resident of Bend, Oregon, and the owner and CEO of both Vector Remote Care, LLC, and Trivek Health Solutions, Inc.

25. Due to the Defendants' interlocking corporate structures and common ownership and control, the conduct alleged in this complaint is attributable to each Defendant.

## V.
## STATUTORY & REGULATORY FRAMEWORK

### A. The False Claims Act

26. The FCA, 31 U.S.C. §§ 3729 *et seq.*, establishes liability for any "person" (natural or corporate) who, *inter alia*:

   a. "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," 31 U.S.C. § 3729(a)(l)(A); or

   b. "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim," *id.* § 3729(a)(l)(B).

27. "Knowing" is defined by the FCA to include "deliberate ignorance of the truth" or "reckless disregard of the truth." *Id.* § 3729(b)(1).

28. The FCA defines "claim" to include any request for money that:

   is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government—

   (I) provides or has provided any portion of the money or property requested or demanded; or

   (II) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded....

5

*Id.* § 3729(b)(2)(A)(ii).

29. For each false claim or other FCA violation, the statute provides for the assessment of treble damages, plus a civil penalty. *Id.* § 3729(a)(1)(G).[1]

30. The FCA provides for payment of a percentage of the United States' recovery to a private individual who brings suit on behalf of the United States (the "Relator") under the FCA. *See id.* § 3730(d).

**B. The Medicare Program**

31. The Medicare program pays for certain healthcare services provided to certain segments of the population. Entitlement to Medicare is based on age, disability, or affliction with end-stage renal disease. *See* 42 U.S.C. §§ 1395 *et seq.*

32. HHS, through CMS, administers the Medicare program.

33. The Medicare program has four parts. As relevant here, Medicare Part A covers all inpatient hospital services, 42 U.S.C. §§ 1395c to 1395i-5, and Medicare Part B covers other medical services referred to by an eligible medical professional, 42 U.S.C. §§ 1395j to 1395w-5.

34. To receive payment under Medicare Part A or B, a provider must submit claims to the appropriate Medicare Administrative Contractor or "MAC"[2] using a CMS-1500 form. *See* Form CMS-1500.[3] The CMS-1500 form requires the provider to identify the services for which

---

[1] 31 U.S.C. § 3729(a)(1)(G) provides a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, Pub. L. No. 104-410, 104 Stat. 890 (1990), *amended by* the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Pub. L. No. 114-74, 129 Stat. 599 (2015); *see* 28 U.S.C. § 2461 note. On June 19, 2020, the Department of Justice promulgated a Final Rule increasing the penalty for FCA violations occurring after November 2, 2015. For such penalties assessed after June 19, 2020, the minimum penalty is $11,665 and the maximum is $23,331. *See* 28 C.F.R. § 85.5; 85 F.R. 37005 (June 19, 2020).
[2] A MAC is a private insurer awarded a geographic jurisdiction to process medical claims for Medicare beneficiaries. The current A/B MAC for New York is National Government Services, Inc. ("NGS").
[3] *Available at* https://www.cms.gov/Medicare/CMS-Forms/CMS-Forms/Downloads/CMS1500.pdf (last accessed Nov. 13, 2020).

reimbursement is sought through a five-digit Current Procedural Terminology ("CPT") or Healthcare Common Procedural Coding System ("HCPCS") code. The amount of Medicare reimbursement is based on the lesser of the actual charge and the fee for the appropriate CPT or HCPCS code on a standardized fee schedule established by the Secretary of HHS.

35. The CMS-1500 form also requires the provider to provide the ZIP code for the practice location of the services for which reimbursement is sought. The ZIP code identifies the Medicare payment locality in which the services were performed. *See* Form CMS-1500.

36. CMS has assigned Geographic Practice Cost Index values to each Medicare payment locality, which are used to adjust the allowable reimbursement amount to reflect the variation in practice costs from area to area.[4]

37. The ZIP code is also used to determine which MAC has geographic jurisdiction over the services rendered. *See* Medicare Claims Processing Manual, CMS Publication No. 100-04 (the "Claims Manual"), Ch. 1 § 10.1.1.

38. The CMS-1500 form also requires the provider to make the following certification:

> In submitting this claim for payment from federal funds, I certify that: 1) the information on this form is true, accurate and complete … [and] 4) **this claim … complies with all applicable Medicare and/or Medicaid laws, regulations, and program instructions for payment** …

Form CMS-1500 at 2 (emphasis added).

39. A provider may also submit the electronic equivalent of this claim form, which contains a substantially similar certification.

---

[4] *See* https://www.cms.gov/apps/physician-fee-schedule/overview.aspx (last accessed Nov. 13, 2020).

40. CMS guidance as to electronic claims submission is found in Chapter 24 of the Claims Manual. Among other things, the guidance specifies the minimum content of the enrollment form that a local MAC may use to sign up providers to submit claims electronically. Per the Claims Manual, such an enrollment form must contain, and the enrolling provider must acknowledge, at least the following statements:

> The provider agrees to the following provisions for submitting Medicare claims electronically to CMS or to CMS' A/B MACs ....
>
> * * *
>
> 7. That it will submit claims that are accurate, complete, and truthful;
>
> * * *
>
> 12. That it will acknowledge that all claims will be paid from Federal funds, that the submission of such claims is a claim for payment under the Medicare program, and that anyone who misrepresents or falsified or causes to be misrepresented or falsified any record or other information relating to that claim that is required pursuant to this agreement may, upon conviction, be subject to a fine and/or imprisonment under applicable Federal law; [and]
>
> * * *
>
> 14. That it will research and correct claim discrepancies[.]

Claims Manual, Ch. 24 § 30.2.

41. The submission of such a certification, if false, is a violation of the FCA. 31 U.S.C. § 3729(a).

42. Each such false certification is a separate violation of the FCA.

**C.  Independent Diagnostic Testing Facility (IDTF) Requirements**

43. To be eligible for Medicare reimbursement, an IDTF must meet the requirements set forth in 42 C.F.R. § 410.33, including the following:

> a. An IDTF must "maintain a physical facility" with, inter alia, adequate space to perform the services designated on the enrollment application, necessary diagnostic testing equipment, and "technical staff on duty with the appropriate credentials to perform tests." *Id.* § 410.33(g).

      b. An IDTF must have a supervising physician that provides at least general supervision as to the diagnostic procedures performed by the IDTF. *Id.* § 410.33(b).

      c. A "fixed-location" IDTF (an IDTF with one practice location) may not share the location with another Medicare-enrolled individual or organization. *Id.* § 410.33(g)(15).

44. CMS will revoke the billing privileges of any IDTF that fails to meet these standards. 42 C.F.R. § 410.33(h).

45. For Medicare billing purposes, diagnostic tests often have two component parts: the technical and professional components (the "TC" and "PC," respectively). For RCM, the TC consists of the preparation and processing of raw RCM data by a certified technician. The PC consists of the interpretation of the RCM data by a physician after the data has been processed.

46. When an IDTF performs the TC, but not the PC, of a diagnostic test, the Claims Manual requires the IDTF to "report the name, address and NPI of the *location where each component was performed*" when submitting claims for reimbursement to CMS. Claims Manual, Ch. 35 § 10.2.2 (emphasis added).

## VI.
## DEFENDANTS' FRAUD

47. Vector conjured a New York sham location in October 2019. Relator was hired soon thereafter as a patient support coordinator, and worked on-site until April 2020, when Relator began working from home.

48. Vector submitted a single Medicare enrollment application for the New York location to NGS, the A/B MAC for New York.

49. The application falsely designated the New York location as an IDTF that would perform the technical component (TC) of RCM. *See* **Exhibit A** (Medicare Enrollment Application) at 8, 42.

50. About a week before Thanksgiving 2019, a patient support coordinator from the Bend, Oregon office visited the New York location to train Relator. He mentioned that Vector is using the address in New York solely to increase Medicare reimbursements.

51. Relator came to realize that the New York location did not have the staffing or equipment needed for a legitimate IDTF.

52. Vector's New York location billed for over 20,000 patients, most of whom were Medicare beneficiaries. Virtually all of these patients and their treating physicians were located outside New York; most were on the west coast. *See* **Exhibit B** (Redacted Sample Patient List).

53. Defendants' technicians worked remotely outside of New York and performed all RCM-related work off-site. Relator rarely, if ever, saw technicians working at the New York location.

54. Vector employed two certified full-time RCM technicians, Shana Coker and Emma Chamberlain. However, Coker resided in Oregon and Chamberlain resided in Rhode Island; both worked remotely.

55. Vector also employed several per diem technicians who performed the bulk of the RCM data processing work. But, like Coker, these per diem technicians were based outside New York, in California, Georgia, Michigan, Oregon, Rhode Island, and Virginia.

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

56. Thus, the New York location was not a legitimate testing facility serving the local area. Rather, its sole purpose was to funnel Vector's existing patients through that location to take advantage of the higher Medicare reimbursement rates available in New York City.

57. As an example, the average reimbursement rate for the TC of RCM performed in Bend, Oregon was $24.76.[5] The same procedure, if performed in Queens, New York, would be $31.97. This represents an almost 30% increase in Medicare reimbursement. A similar payment disparity exists between New York City and many parts of California, Georgia, Michigan, Rhode Island, and Virginia.[6]

58. Despite the fact that all of Vector's technicians worked outside New York, the Medicare enrollment application submitted for the New York location identified a single practice location—i.e., the Long Island City address—and listed the staff and equipment available at that location. *See generally* **Exhibit A**. Furthermore, the application explicitly claimed that Medicare patients were seen at the New York location. *Id.* at 15.

59. Further, the cover letter submitted with the Medicare enrollment application described the New York location's operations as follows:

> Vector Remote Care (Vector) is an IDTF that monitors implanted cardiac devices which have been implanted in patients. The business has an administrative office location in Long Island City *out of which our technicians monitor these devices and communicate all findings with the interpreting physicians and staff.*

**Exhibit C** (Cover Letter) (emphasis added).

---

[5] The CPT codes for the technical component of RCM are 93296 and G2066. The MPFS rate for CPT code G2066 is determined by the local MAC. For New York, NGS has set a reimbursement rate for G2066 equal to that of CPT 93296. *See* https://bit.ly/2HHRshb (last accessed Nov. 13, 2020).
[6] The MPFS payment amounts for these and other payment localities are available at https://www.cms.gov/Medicare/Medicare-Fee-for-Service-Payment/PFSlookup (last accessed Nov. 13, 2020).

60. These patently false representations were designed to disguise the true nature of the New York location.

61. Upon information and belief, Vector submitted Medicare claims by falsely representing that RCM was performed at the New York location, and thereby received Medicare payments that it was not entitled to.

62. Indeed, because the New York location was enrolled only with NGS, which does not have geographic jurisdiction covering Oregon, California, or Georgia, Vector could not have received Medicare reimbursement for any services that were properly identified as performed by technicians in those states.[7]

63. If a MAC receives a claim for services performed outside its jurisdiction, it will return the claim as "unprocessable."[8]

64. Moreover, due to the lack of on-site technicians and a host of other regulatory violations, the New York location was not eligible to bill Medicare in the first place.

65. The location lacked the necessary equipment for processing RCM data. The location had a few implantable cardiac monitoring devices in stock, but they were not used because they needed to be connected to patients, and patients never came to the location for testing.

66. The supervising physician hired by Vector and listed on the Medicare enrollment application did not show up at the New York location and did not conduct any review of the equipment or staff at that location.

---

[7] NGS has geographic jurisdiction over Connecticut, Maine, Massachusetts, New Hampshire, New York, Rhode Island, Vermont, Illinois, Minnesota, and Wisconsin. *See* https://www.cms.gov/Medicare/Medicare-Contracting/Medicare-Administrative-Contractors/Downloads/AB-Jurisdiction-Map-Jun-2019.pdf (last accessed Nov. 13, 2020).
[8] Claims Manual, Ch. 1 § 10.1.9.1.

67. The location was not a dedicated facility, but a small room inside a WeWork rental workspace shared by dozens of other businesses including healthcare providers, many of whom were likely enrolled in Medicare.

68. In or around April 2020, Vector directed its on-site employees, including Relator, to work from home, meaning that *no one* was working at the New York location.

69. As of June 30, 2020, Vector canceled its WeWork room rental and switched to a "Hot Desk" membership at the same WeWork location, which equates to the rental of a single seat in the common area.[9] The New York location was thus reduced to a desk shared with many other businesses, posing as a full-fledged testing facility.

70. Vector continued to submit claims to Medicare from the New York location even after downgrading the WeWork rental.

71. The above conditions violated numerous eligibility requirements in 42 C.F.R. § 410.33 and thus rendered the New York location ineligible to bill Medicare for services it provided as an IDTF.

72. Through the above scheme, each claim Defendants submitted to Medicare for RCM performed at the New York location was a false claim "presented" within the meaning of the False Claims Act.

73. In submitting these false claims, Defendants made or used false records and statements material to those false and fraudulent claims, as further described below.

---

[9] *See* https://www.wework.com/workspace/hot-desk (last accessed Nov. 13, 2020).

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

## COUNT I:
## FEDERAL FALSE CLAIMS ACT: PRESENTATION OF FALSE CLAIMS
### 31 U.S.C. § 3729(a)(1)(A)

74. Relator repeats and re-alleges the preceding paragraphs as if fully set forth herein.

75. As described above, Defendants knowingly presented, or caused to be presented, to an officer, employee, or contractor of the United States, false and fraudulent claims for services and treatments provided to Medicare beneficiaries. The claims were false and fraudulent because in making those claims, Defendants represented that the services were provided at the New York location when in fact the services were performed by technicians located outside New York.

76. The claims were also false and fraudulent because the New York location was not properly certified as an IDTF and thus ineligible to bill Medicare.

77. By virtue of the false and fraudulent claims that Defendants presented or caused to be presented, the United States suffered damages in an amount to be determined at trial, and is entitled to treble the amount of those damages under the FCA, plus civil penalties of not less than $11,665 and up to $23,331 for each violation.

## COUNT II:
## FEDERAL FALSE CLAIMS ACT: MAKING OR USING
## FALSE RECORD OR STATEMENT TO CAUSE FALSE CLAIM TO BE PAID
### 31 U.S.C. § 3729(a)(1)(B)

78. Relator repeats and re-alleges the preceding paragraphs as if fully set forth herein.

79. As described supra, Defendants knowingly made, used, or caused to be made or used, false records or statements material to false or fraudulent claims for payment from the United States.

80. By virtue of these false or fraudulent records and statements, the United States suffered damages in an amount to be determined at trial, and is entitled to treble the amount of those damages under the FCA, plus civil penalties of not less than $11,665 and up to $23,331 for each violation.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Relator respectfully requests that this Court enter judgment in her favor and the United States, granting the following:

(A)  an order requiring Defendants to immediately cease and desist from the conduct described herein and all similar conduct;

(B)  an award to the United States for treble its damages, a civil penalty for each violation of the FCA, and its costs pursuant to 31 U.S.C. § 3729(a)(3);

(C)  an award to Relator in the maximum amount permitted under 31 U.S.C. § 3730(d), and for the reasonable attorney's fees and costs she incurred in prosecuting this action;

(D)  awards to the United States and Relator for pre- and post-judgment interest at the rates permitted by law; and

(E)  an award of such other and further relief as this Court may deem to be just and proper.

[this space intentionally left blank]

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Relator demands trial by jury on all questions of fact raised by the complaint.

Dated: November 18, 2020

Respectfully submitted,

**BROWN, LLC**

*/s/ Chunsoo Park*
Chunsoo "Terence" Park
Benjamin Lin
Patrick S. Almonrode
Jason T. Brown
111 Town Square Place, Suite 400
Jersey City, NJ 07310
(877) 561-0000 (office)
(855) 582-5297 (fax)
terence.park@jtblawgroup.com
ben.lin@jtblawgroup.com
patalmonrode@jtblawgroup.com
jtb@jtblawgroup.com

*Attorneys for Relator Vanessa Mathurin*

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

## CERTIFICATE OF SERVICE

I hereby certify that, on November 18, 2020, I caused a true copy of the Complaint in the matter captioned *United States of America ex rel. Mathurin v. Vector Remote Care, LLC.* to be served upon the following, along with written disclosure of substantially all material evidence and information possessed by Relator:

*by hand delivery and USPS Certified Mail, to*

Civil Process Clerk
United States Attorney's Office
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201

*by USPS Certified Mail, Return Receipt Requested, to*

Office of the Attorney General of the United States
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

Patrick S. Almonrode